IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TODD J.W.,[1] **Plaintiff,** v. **COMMISSIONER of SOCIAL SECURITY,** **Defendant.** | Case No. 21-CV-00388-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 423.[2]

## PROCEDURAL HISTORY

Plaintiff applied for both DIB and SSI in February 2019, alleging disability beginning on December 16, 2018. (Tr. 22). Both claims were initially denied on June 27, 2019, and upon reconsideration on November 20, 2019. (Tr. 129, 132). After a hearing on August 25, 2020 (Tr. 40-67), the Administrative Law Judge ("ALJ") denied

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423 et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

the application on September 30, 2020. (Tr. 19-39). On February 9, 2021, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final agency decision. (Tr. 6-11). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

1. Whether the ALJ erred in her physical residual functional capacity ("RFC") determination due to an improper evaluation of the medical opinion evidence.

## APPLICABLE LEGAL STANDARDS

To qualify for disability benefits, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical or laboratory diagnostic techniques. 32 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine

whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated differently, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairment(s) meet or medically equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education, and work experience 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). Other than at step 3, a negative answer at any step precludes a finding of disability. The plaintiff bears the burden of proof at steps 1 to 4. *Id*. Once the plaintiff shows an inability to

perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id*.

The Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th. Cir. 2010), and cases cited therein.

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. She found that the claimant had not engaged in substantial gainful activity since December 16, 2018. (Tr. 25). The ALJ found that Plaintiff had severe impairments of rheumatoid arthritis; bilateral great toe osteoarthritis; mild first metatarsophalangeal joint osteoarthritis; bilateral plantar fasciitis and metatarsalgia; and obesity. (*Id.*). The ALJ noted that Plaintiff's medically determinable hypertension and allergic rhinitis are non-severe impairments. (*Id.*). The ALJ considered all of the Plaintiff's medically determinable impairments, including those that are not severe, when she assessed Plaintiff's RFC. (*Id.*).

The ALJ did not doubt the existence of the problems Plaintiff described. However, the ALJ's primary concern was with the severity of those problems. (*Id.*). The ALJ reasoned that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects" of his symptoms "were not entirely consistent with the medical evidence and other evidence in the record. . . ." (Tr. 30). The ALJ concluded that Plaintiff had the RFC to perform a range of work at the sedentary exertional level with additional postural, manipulative, and environmental restrictions. (Tr. 26).

As far as limitations, the ALJ decided that Plaintiff had the RFC to perform sedentary work except:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs. He can engage in occasional

kneeling, crouching, and crawling and can occasionally perform overhead reaching, pushing or pulling tasks. [Plaintiff] is limited to no more than frequent handling and fingering and he cannot at unprotected heights, around moving mechanical parts or other such hazards. Plaintiff cannot have concentrated exposure to heat, extreme cold, or humidity. (*Id*.).

The ALJ found that Plaintiff is unable to perform any past relevant work (Tr. 31). The Plaintiff had past relevant work as a cleaner. (*Id*.). Cleaner is defined in the Dictionary of Occupational Titles ("DOT") number 381.687-034. (*Id*.). Cleaner is categorized as medium exertional level and unskilled with specific vocational preparation ("SVP"). (*Id*.). As required by SSR 82-62, this work was substantial gainful activity, was performed long enough to achieve average performance, and was performed within the relevant time period. (*Id*.). The ALJ relied on the testimony of a vocational expert ("VE"). The VE stated Plaintiff's past work as a cleaner "exceeds the [Plaintiff's] residual functional capacity." (*Id*.). Accordingly, the Plaintiff is unable to perform past relevant work as actually or generally performed.

However, the ALJ concluded that, when considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id*.). At the time of the alleged onset date, Plaintiff was 42 years old and had at least a high school education. (*Id*.). The VE testified that:

> Given all of these factors the individual would be able to perform the requirements of representative occupations such as: **(1)** Hand Packer: DOT # 559.687-014; SVP 2; sedentary work; 22,000 jobs nationally; **(2)** Production Worker: DOT # 739.687-066; SVP 2; sedentary work; 25,000 jobs nationally; and **(3)** Inspector/Tester/Sorter: DOT # 521.687-086; SVP 2; sedentary work; 12,000 jobs nationally. (Tr. 32).

Based on this testimony, the ALJ stated that, considering the Plaintiff's age,

education, experience, and RFC, the Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.*). The ALJ thus concluded that a finding of "not disabled" was appropriate. (Tr. 32-33). Therefore, Plaintiff did not qualify for benefits.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.

### I. Agency Forms

Plaintiff was born in 1976, was forty-two years old at the alleged onset date, and reported having completed two years of college. (Tr. 70, 236). Plaintiff indicated that he received training as a certified nurse's aide. (Tr. 227, 236). In March 2019, Plaintiff submitted a disability report stating that he had rheumatoid arthritis, tendonitis, and osteoporosis. (Tr. 235). From April 2009 to December 2018, Plaintiff worked as an EVS Aide. (Tr. 236). Plaintiff cleaned surgical rooms, tables, and X-Ray machines, organized and mopped rooms, changed curtains and linens, and took out the trash. (*Id.*). Plaintiff did not operate machines, tools, or equipment. (Tr. 237). Plaintiff also did not use technical knowledge or skills. (*Id.*). Plaintiff did not supervise other employees and was not a lead worker. (*Id.*). The heaviest weight Plaintiff lifted as an EVS Aide was sixty pounds and Plaintiff reported lifting sixty pounds frequently. (*Id.*).

### II. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in August

2020. (Tr. 40).

      Plaintiff testified that he cannot work anymore because of the pain in his feet, ankles, lower extremities, knees, and hips. (Tr. 53). Plaintiff also testified to experiencing back and shoulder pain due to the pain in his lower extremities, which in turn forced him to keep his feet elevated for a significant portion of the day unless he had to use the bathroom or get something to drink. (Tr. 53, 55). Plaintiff testified that he could stand and walk for about fifteen minutes before taking a break. (Tr. 56). Plaintiff testified that sitting in an office chair for more than ten minutes would be difficult and the most he attempts to lift is about three pounds. (Tr. 57-58). Plaintiff testified that he does not drive anymore but that his wife drives him. (*Id.*). Additionally, Plaintiff testified that his wife helps him put on his shoes and makes sure he will not fall in the house. (Tr. 58-59). Plaintiff testified that exposure to extreme heat or cold causes swelling, and that rain also causes difficulty (Tr. 59-60).

      A VE also testified. The ALJ asked the VE hypothetical questions regarding different types of individuals which comported with the ultimate RFC assessment. (Tr. 64). The individuals in the hypotheticals reflected Plaintiff's condition. (*Id.*). The VE testified that the individuals described in the hypotheticals could not perform Plaintiff's past relevant work because the work was medium exertional. (*Id.*). However, the VE noted that there is other work available for this person that is sedentary, unskilled work. (*Id.*). The VE also testified that if this person needed to elevate their feet for four hours per day, needed to alternate standing to sitting every ten minutes, or if this person needed to be absent two or more days per month, that

would eliminate the option of sedentary work. (Tr. 64-65).

### III. Medical Records

Plaintiff first came under care for polyarthritis in 2016 with medial pain over the bilateral feet and ankles. (Tr. 478). X-rays of the left foot taken in July 2017 indicated a tiny avulsion injury over the distal talus and a tiny posterior calcaneal enthesophyte. (*Id.*).

On February 8, 2018, Plaintiff was seen by Sanam Vakassi, DO ("Dr. Vakassi") who noted a swollen left foot with a visible deformity. (Tr. 440). Dr. Vakassi noted that Plaintiff was wearing a boot and using crutches to get around. (*Id.*). Dr. Vakassi made a referral to a podiatrist and diagnosed Plaintiff with Gout. (Tr. 439-40). Plaintiff was advised to use foot inserts until he was evaluated by a podiatrist. (Tr. 438).

Per the request of Dr. Sana Usman ("Dr. Usman"), X-Rays were conducted in October 2018 due to medial pain over the feet and ankles. (Tr. 442). The X-Rays indicated minimal early degenerative changes at the tibiotalar joint. (*Id.*).

The rheumatoid arthritis profile dated October 24, 2018, indicated a weak positive result for rheumatoid arthritis. (Tr. 445). Treatment notes from December 5, 2018, indicated that Plaintiff continued to experience pain at the base of his great toes and had limited ambulation. (Tr. 431). On December 13, 2018, it was noted that Plaintiff had non-pitting edema of the feet. (Tr. 429).

In January 2019, Plaintiff was seen by Nurse Practitioner Christie R. Govero ("NP Govero") who noted a six-year history of foot pain which had progressed to

severe pain with constant swelling. (Tr. 305). On examination, Plaintiff had tenderness in his elbows, wrists, PIP joints, MCP joints, knees, and ankles. (Tr. 306). NP Govero noted significant swelling in Plaintiff's ankles and feet. (Tr. 307). X-Rays taken on January 30, 2019, indicated great toe osteoarthritis of the toes. (Tr. 429).

On February 20, 2019, Plaintiff's cardiologist noted that he was extremely limited in exercise due to rheumatoid arthritis symptoms. (Tr. 322). Plaintiff was diagnosed with hypertension, dyslipidemia and class three severe obesity. (Tr. 325).

Plaintiff was seen by a podiatrist Christopher Dugan, DPM ("Dr. Dugan") in January of 2019 who assessed him with plantar fasciitis. (Tr. 445, 469). Dr. Dugan noted that Plaintiff was in a significant amount of pain and discomfort associated with the arch area of both feet and that he had bunion deformities. (Tr. 456). Dr. Dugan identified these problems as moderate to severe. (Tr. 457). Dr. Dugan diagnosed rheumatoid arthritis bilateral ankle and foot, hallux valgus bilateral, and bilateral metatarsalgia. (Tr. 459). Dr. Dugan advised Plaintiff of cortisone injections and surgery for relief. (Tr. 460). Dr. Dugan noted that Plaintiff's weight was an encumbrance to healing. (*Id.*).

Dr. Dugan saw Plaintiff in January, February, and March of 2019. (Tr. 447). Plaintiff reported that his foot pain was made worse by standing, walking, or being barefoot. (Tr. 456). Dr. Dugan recommended Plaintiff change his footwear, take anti-inflammatory medication, and advised Plaintiff on an exercise plan. (Tr. 456). Dr. Dugan reviewed imaging on the February visit and stated that it "failed to show any acute changes" and there was "no evidence of chronic long-term osteoarthritis." (Tr.

461). On the March visit, Dr. Dugan noted Plaintiff walked with an antalgic abnormal gait pattern. (Tr. 456). Plaintiff received orthotics and Dr. Dugan noted clinical improvement after Plaintiff had recently started rheumatoid arthritis medication. (Tr. 456-60). Dr. Dugan opined that Plaintiff could sit eight hours, stand/walk one hour, and could walk half a block. (Tr. 480). Dr. Dugan made an assessment for unscheduled breaks which indicated a fifteen-minute break after every fifteen minutes of work. (*Id.*). Additionally, Dr. Dugan claimed Plaintiff would be absent from work four times per month. (Tr. 481).

On April 5, 2019, NP Govero noted that Plaintiff had tenderness in his elbows, wrists, and fingers, with swelling in his hands. (Tr. 490). Plaintiff also had crepitus in his knees and tenderness and swelling in his ankles bilaterally. (*Id.*). She noted only mild improvement with Humira. (*Id.*).

Consultative examiner Dr. Adrian Feinerman, MD ("Dr. Feinerman") evaluated Plaintiff on June 4, 2019. (Tr. 492). Dr. Feinerman noted Plaintiff had thickened synovia of the wrists and elbows, but Plaintiff had no abnormality of any extremity. (Tr. 499). Dr. Feinerman noted Plaintiff had "no limitation of motion of any joint." (*Id.*). Additionally, Plaintiff's "grip strength is strong and equal bilaterally." (*Id.*). Dr. Feinerman noted that Plaintiff's "ambulation is normal without an assistive device" and that "[Plaintiff] is able to ambulate fifty feet." (*Id.*). Plaintiff would not stand on his toes, stand on his heels, or squat due to foot pain. (*Id.*).

On September 3, 2019, Plaintiff was seen by Dr. Stanley Noll, MD ("Dr. Noll"). (Tr. 510). Dr. Noll noted that Plaintiff was taking methotrexate instead of Humira.

(Tr. 511). Dr. Noll reported normal gait and normal movement of all extremities. (*Id.*). A few months later, Dr. Noll stated that Plaintiff could lift about 10 pounds but was in pain after a short period of time. (Tr. 534). Dr. Noll opined on March 2, 2020, that Plaintiff is "very limited due to rheumatoid arthritis." (Tr. 584).

## IV. State Agency RFC Assessments

On June 22, 2019, State agency consultant Vidya Madala, MD ("Dr. Madala") reviewed Plaintiff's record. (Tr. 76). Dr. Madala opined that Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently; could sit for six hours and stand/walk for two hours; could occasionally climb ramps, stairs, ladders, or scaffolds, and could occasionally stoop, crouch and crawl. (Tr. 76-77). In November 2019, at the reconsideration level, State agency consultant Marion Panepinto, MD ("Dr. Panepinto") adopted Dr. Madala's findings. (Tr. 102-03).

## ANALYSIS

### I. Plaintiff's Residual Functional Capacity

Plaintiff alleged the ALJ erred in evaluating the medical evidence in the record in her decision. Specifically, Plaintiff asserted that "the ALJ's physical RFC determination is unsupported by substantial evidence because she failed to properly evaluate the medical opinion evidence and should have found the opinions of Dr. Dugan persuasive." (Plaintiff br. 9). The ALJ found that Plaintiff had the RFC to perform sedentary work except:

> [H]e cannot climb ladders, ropes, scaffolds, and can only occasionally climb ramps and stairs. He can engage in occasional kneeling, crouching and crawling and can occasionally perform overhead reaching, pushing, or pulling tasks. The [plaintiff] is limited to no more than frequent

> handling and fingering and he cannot at unprotected heights, around moving mechanical parts or other such hazards. He cannot have concentrated exposure to extreme heat, cold, or humidity. (Tr. 26).

The ALJ also determined that Plaintiff could perform the jobs of packer, production worker, or inspector/tester/sorter. (Tr. 32).

Plaintiff contends that the ALJ improperly discounted the opinion evidence of Dr. Dugan, Plaintiff's treating physician, thus leaving the RFC unsupported by substantial evidence. (Plaintiff's br. 10-11). Among the factors the ALJ is required to consider, the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a), 416.920(a). Plaintiff asserted that the ALJ's decision cannot stand when the ALJ finds the opinion not persuasive because it is inconsistent with medical evidence, but the ALJ does not explain how the opinion and evidence are inconsistent. (Plaintiff's br. 13).

In assessing a Plaintiff's RFC, an ALJ must consider all relevant evidence in the case record and evaluate the record fairly. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3). An ALJ who denies benefits must build an "accurate and logical bridge from the evidence to her conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). An ALJ is not allowed to play doctor or use lay opinions to fill evidentiary gaps that exist in the record. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The Court does not reweigh evidence considered by the ALJ. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Here, it appears that the ALJ provided a sufficient explanation for her decision. The ALJ was not required to credit Dr. Dugan's opinion even though he was

a treating doctor; "while the treating physician's opinion is important, it is not the final word on a claimant's disability. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted). A treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) (citing *Clifford*, 227 F.3d at 870).

The regulations refer to a treating healthcare provider as a "treating source." The applicable regulation, 20 C.F.R. § 404.1527(c)(2), provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

Supportability and consistency are the important factors to be considered in weighing medical opinions. "The regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable and clinical laboratory diagnostic techniques,' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ did not err because she sufficiently explained why she viewed Dr. Dugan's opinion as only partially persuasive. Dr. Dugan asserted that Plaintiff could

only walk for one hour, would require unscheduled breaks, or he would be absent more than four days. (Tr. 480). The ALJ pointed out that Dr. Dugan noted antalgic gait and pain on palpation and range of motion; however, there was no edema of lower extremities and sensation was normal. (Tr. 29). Moreover, contrary to the Plaintiff's contention that every examining source supported Dr. Dugan's assessment (Plaintiff's br. 14), the ALJ noted that in June 2019 Dr. Feinerman's exam showed that Plaintiff walked normally and without assistance for fifty feet and had full muscle strength, tone, and sensation. (Tr. 29). Dr. Noll's exams from September 2019 to January 2020 also showed that Plaintiff walked normally, had normal motor strength and tone, and fully moved his arms and legs. (Tr. 28). The ALJ noted that at the June 2020 follow up, Plaintiff reported that he could walk short distances and lift ten pounds before experiencing pain. (*Id.*). The evidence presented here is more consistent with the finding that Plaintiff had the RFC to perform sedentary work with some limitations. The evidence is not completely consistent with Dr. Dugan's findings. Thus, the ALJ sufficiently explained any inconsistencies and supported her decision to not give controlling weight to Dr. Dugan's opinion.

    The ALJ also noted that Dr. Dugan's recommended care plan of applying a warm compress, rest/elevate, take anti-inflammatory medications, use of orthotics, and wearing appropriate shoe gear is not consistent with the limitations Dr. Dugan found (Dr. Dugan's limitations mentioned above). (Tr. 29). The ALJ infers that this care plan is not the type of treatment that someone with such severe symptoms would have. (*Id.*).

Plaintiff contends that the ALJ erred here because the ALJ "sited no medical source or support for her finding…which leads one to conclude that she made the finding on the basis of her own non-expert opinion." (Plaintiff's br. 14). The ALJ does not need to consult a medical expert to draw conclusions about Plaintiff's course of treatment. *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2009). In *Simila v. Astrue*, the ALJ did not need medical expertise to conclude that injections, pain medication, and physical therapy helped show that a claimant could do light work despite degenerative disc disease. *Simila v. Astrue*, 573 F.3d 503, 513, 519 (7th Cir. 2009). Here, it was reasonable for the ALJ to infer that Dr. Dugan would have prescribed more aggressive medication if the alleged disabilities were at the level of severity alleged by Plaintiff.

The ALJ sufficiently considered the medical evidence and did not err in a manner warranting reversal in her determination of Plaintiff's RFC.

## Conclusion

After careful review of the record, the Court finds that the ALJ committed no reversible errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to close this case and enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

DATED: August 18, 2023

*s/ Stephen P. McGlynn*
STEPHEN P. McGLYNN

**U.S. District Judge**